## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### ROBERT MOORE v. COMMONWEALTH.

#### March 16, 1922.

#### Absent, West, J.

1. INTOXICATING LIQUORS—*Prosecution for Transporting Liquor—
   Corpus Delicti—Case at Bar.*—The instant case was a prosecu-
   tion for unlawfully transporting in an automobile ardent
   spirits. That ardent spirits, in quantity exceeding one quart,
   was being transported by some one at the time in question, was
   the allegation of the indictment, and hence was the *corpus
   delicti* in the case in judgment. And testimony as to the smell
   of liquor and the presence of kegs in the automobile, if it war-
   ranted the jury in finding that ardent spirits were being trans-
   ported in the automobile, falls far short of establishing that
   the quantity of liquor exceeded a quart.
2. CORPUS DELICTI—*Proof—Inference from False Swearing.*—No in-
   ference which a jury might have been warranted in drawing
   from the fact that the accused swore falsely in his testimony
   in his own defense can supply that character of proof of the
   *corpus delicti* which the law requires in all criminal cases.
3. CORPUS DELICTI—*Proof—Confession.*—Even a confession by the
   accused, which is extrajudicial, that he committed the offense
   with which he is charged, is not, alone and uncorroborated,
   adequate proof to establish the *corpus delicti.*

Error to a judgment of the Circuit Court of Scott county.

*Reversed.*

The accused was separately indicted, charged with the
offense of unlawfully transporting ardent spirits in excess
of one quart, to-wit: ten gallons, in, on and by means of a
certain automobile. He was tried and convicted of this
offense. The verdict of the jury fixed as his punishment

a certain fine and confinement in the county jail, and the judgment under review was entered accordingly.

The testimony for the Commonwealth, so far as material, was to the following effect:

A county policeman having received information that "a car was coming up the pike," deputized a number of men to assist him in holding it up and searching it for liquor, but had no warrant authorizing him to do so. They subsequently saw an automobile coming along the public road with two men in it—the driver, named Wilson, and the accused. Whereupon, the policeman hailed the occupants of the car, commanding them to "surrender," get out and let him search the car. Wilson asked the policeman if he had a warrant to search the car. The policeman replied that he did not; but said, "We have you surrounded; surrender and I will treat you nice." Wilson said, "No." The policeman said: "I will treat you nice. Get out and let me search the car." Wilson said: "That may be nice for you, but it will be hell for us." The policeman then stepped up to the car and saw that both men in the car had pistols. Wilson got his pistol from his side, and when he pulled it from under his coat the policeman caught hold of his wrist. Thereupon Wilson said: "I would rather have my brains shot out than my mother know this." The accused had a pistol in his hand. Wilson told the policeman not to enter the car. The policeman again asked to be allowed to search the car. Wilson then turned towards the accused and said: "What about it, old man?" And the accused said: "Hell, no!" The officers held up the car for nearly an hour. The curtains were up. The policeman and two of his deputies testified that they saw "two kegs and what looked like another keg in the car." The policeman testified that when he stepped up to the car he "smelt liquor—it smelled like corn whiskey." Two of the deputies testified that they "smelled liquor in the automobile," and one of these said

that it "smelled like good liquor." The testimony does not show that the accused said anything except his reply above stated to the question of Wilson addressed to him above mentioned. After the parley and the refusal of Wilson and the accused to let the car be searched without a search warrant, the car was allowed to proceed on its way.

The accused, testifying in his own defense, stated that he was not the owner of the car; that Wilson was the owner of it; that he (the accused) was "only a passenger in it." That there were no kegs in the car or liquor in it that he knew of. That he did not know any of the parties who held them up. That he thought there were nine of the men engaged in the holdup, with four shotguns and five pistols. That "they were strangers and we did not know what they meant. We asked them if they had any authority, and they said they did not. They wanted to search the automobile, so they said, and Mr. Wilson told them that if they had a warrant they could; but if they did not have a warrant they could not. I had a little bit of money on me and Mr. Wilson said he had a little, too. There was considerable talking and some wrangling, but finally we were permitted to go on." On cross-examination he further stated: "* * * I did not know what they meant. I understood them to say they wanted to search the car, but they were strangers and armed, and I did not know their purpose. I was just a passenger in the car— got in at Castlewood. It was my business where I had been and what I was doing."

Several witnesses for the defense who had as good opportunities to see the kegs in the car as the accused had, so far as disclosed by the evidence, testified that they did not see any kegs in the car.

In the brief of the Attorney General and his two assistants, this is said: "* * * while we will not confess error, we frankly admit that there is doubt in our minds

whether the evidence substantiates the charge of transporting whiskey."

*W. S. Cox,* for the plaintiff in error.

*Jno. R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

In our view of the case, it will be necessary for us to consider only one of the questions raised by the assignments of error, and that is this:

[1, 2] Was there any evidence before the jury to prove the *corpus delicti?*.

This question must be answered in the negative.

[3] That ardent spirits, in quantity exceeding one quart, was being transported by some one at the time in question was the allegation of the indictment, and hence was the *corpus delicti* in the case in judgment. There was absolutely no evidence of any probative value before the jury on this subject. Even if we could consider that the testimony as to the kegs and the smelling of whiskey or liquor by the witnesses for the Commonwealth warranted the jury in finding the fact that ardent spirits were in the automobile at the time, such evidence falls far short of the character of evidence essential to establish beyond a reasonable doubt that the quantity of the liquor exceeded a quart. And having given the utmost effect which can be properly given to the consideration that the jury may have believed that the accused swore falsely in his testimony in his own defense, still no inference which the jury might have been warranted in drawing for that reason could supply that character of

proof of the *corpus delicti* which the law requires in all criminal cases. Even a confession by the accused, which is extrajudicial, that he committed the offense with which he is charged, is not, alone and uncorroborated, adequate proof to establish the *corpus delicti*.

The case must, therefore, be reversed.

*Reversed.*